**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1221
_____

UNITED STATES OF AMERICA

v.

ALEXANDER MURILLO,
also known as Alexander Murillo-Barquero,

Alexander Murillo,

Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2:09-cr-00816-001)
District Judge:  Hon. Juan R. Sanchez
Submitted Pursuant to Third Circuit LAR 34.1(a)
March 19, 2013

Before:  FUENTES, CHAGARES, and BARRY, <u>Circuit Judges</u>.

(Filed: April 30, 2013)
_____

OPINION
_____

CHAGARES, <u>Circuit Judge</u>.

Defendant Alexander Murillo appeals the sentence imposed upon him by the

District Court, arguing that the court improperly applied the advisory United States

Sentencing Guidelines ("the Guidelines") provision for assault with intent to commit

murder and attempted murder. For the reasons that follow, we will affirm the judgment of sentence entered by the District Court.

## I.

We write solely for the benefit of the parties and recite only those facts essential to our disposition. The charges against Murillo arose from an incident that occurred on New Year's Eve 2008 into the early morning of January 1, 2009. Murillo was celebrating the new year with his girlfriend and his girlfriend's sister at Tom Foolery's Bar in Philadelphia. At some point, the three became involved in an altercation. Murillo left the bar and retrieved an AR-15 style rifle from the trunk of his car. He loaded the weapon and fired into the air and then into a crowd of people standing outside the bar, injuring two people. He then drove his car past the front of the bar and fired again. One victim was shot in the back, stomach, and foot. The other was shot in the back, thigh and hip. Both were hospitalized and one reported permanent injuries. Murillo maintains that he shot into the air the first time and only fired into the crowd once he was in his car and driving by the bar.

Murillo and his girlfriend fled the scene. They went to her mother's home, switched cars, and made their way to New Jersey where they were eventually apprehended. Once in custody, Murillo waived his <u>Miranda</u> rights and gave a statement. He explained that the fight inside the bar began when his girlfriend and her sister became involved in an altercation with other partygoers and that he stepped in only when a man "took a swing" at his girlfriend. Supplemental Appendix ("Supp. App.") 45a. Murillo also provided the following description of the first shots fired at the group of people

whom he believed were attacking him: "I ran toward them and I shot, not directly at people but toward them." Supp. App. 46a. He also confessed to the second shooting: "we drove past the bar and some of the men who were beating me up were standing in front of the bar so I stopped and fired at the bar." Id. Murillo estimated that he fired "4 or 5, 7 at the most" shots the first time and "3 or 4" shots from the car. Id.

The shootings resulted in both state and federal charges. Murillo was convicted of attempted first degree murder, aggravated assault, and related offenses in the Court of Common Pleas of Philadelphia County.[1] On December 17, 2009, a grand jury returned an indictment that charged Murillo with violating 18 U.S.C. § 922(g)(5)(A), possession of a firearm by a person "illegally or unlawfully in the United States." Murillo, who is twenty-six years old, originally entered the United States on a six-month visitor's visa in 1996. He has been undocumented since December 10, 1996.

Murillo pled guilty on May 10, 2010. At his sentencing hearing, held on January 13, 2012, Murillo objected to the presentence investigation report's application of U.S.S.G. § 2A2.1(a)(2), which calls for a base offense level of twenty-seven when a defendant commits an assault with the intent to commit murder or attempted murder, and argued that U.S.S.G. § 2A2.2, which sets the offense level for aggravated assault, should apply instead.[2] Murillo also presented mitigating evidence; he demonstrated progress

---

[1] Murillo's appeals from those convictions are currently pending before the Pennsylvania Superior Court.

[2] Section 2A2.1 applies to Murillo through several cross-references in the Guidelines. U.S.S.G. § 2K2.1(c)(1) addresses possession of a firearm "in connection with the commission or attempted commission of another offense" and directs the sentencing

3

while in prison, including completion of his high school degree.  Two individuals, his sister and his children's grandmother, spoke on his behalf and others submitted letters of support.

The District Court concluded that U.S.S.G. § 2A2.1(a)(2)'s offense level of 27 applied because Murillo's conduct evidenced a specific intent to kill.[3]  The court added four offense levels because a victim sustained permanent or life-threatening bodily injury, U.S.S.G. § 2A2.1(b)(1)(A), subtracted two offense levels for acceptance of responsibility, U.S.S.G. § 3E1.1(a), and subtracted another level because Murillo timely notified the Government of his intent to plead guilty, U.S.S.G. § 3E1.1(b).  The resulting offense level of 28, combined with Murillo's criminal history category of I, yielded an advisory Guidelines range of 78 to 97 months.  After considering the relevant 3553(a) factors, the court granted the Government's request for an upward variance in light of the seriousness of the injuries Murillo inflicted and the fact that Murillo's conduct "placed a crowd of people — multiple people — at substantial risk of serious injury or . . . death."  Appendix ("App.") 87.  The court found that an upward variance of two levels was appropriate. The new offense level of 30, combined with criminal history category I, yielded an

court to U.S.S.G. § 2X1.1 (Attempt, Solicitation, or Conspiracy).  Section 2X1.1, in turn, provides:  "[w]hen an attempt, solicitation, or conspiracy is expressly covered by another offense guideline section, apply that guideline section."  U.S.S.G. § 2X1.1(c)(1).  That led the sentencing court to U.S.S.G. § 2A2.1, which covers assault with intent to commit murder and attempted murder.

[3]  If the District Court had found premeditation, U.S.S.G. § 2A2.1(a)(1), which sets a base offense level of 33 "if the object of the offense would have constituted first degree murder," would have applied.

4

advisory range of 97 months to 121 months of imprisonment.[4]  Citing, in particular, the

seriousness of Murillo's offense, his possession and use of an assault rifle, the risk posed

to innocent bystanders, the need for deterrence, and the need to protect the public, the

District Court sentenced Murillo to 120 months of imprisonment followed by three years

of supervised release.

Murillo filed a timely appeal of his sentence.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231.  We exercise

jurisdiction pursuant to 28 U.S.C. § 1291.

We review factual findings relevant to the District Court's application of the

Guidelines for clear error and review the District Court's interpretation of the Guidelines

de novo.  United States v. Grier, 475 F.3d 556, 570 (3d Cir. 2007) (en banc).  A district

court will make factual findings relevant to the application of the Guidelines by a

preponderance of the evidence.  Grier, 475 F.3d at 561.

Murillo argues the District Court's application of  U.S.S.G. § 2A2.1(a)(2) to

calculate his offense level was improper because his conduct did not evidence a specific

intent to kill.  Instead, Murillo contends, the court should have applied U.S.S.G. § 2A2.2,

which sets the advisory offense level for aggravated assault, because the evidence only

established recklessness.

---

[4]  The court denied the Government's request for an upward variance based upon
Murillo's use of an assault rifle.

Section 2A2.1 of the Guidelines sets a base offense level of 33 for assault with intent to commit murder or attempted murder "if the object of the offense would have constituted first degree murder" and a base offense level of 27 otherwise. U.S.S.G. § 2A2.1(a). The section's application notes use the federal murder statute to define first degree murder. U.S.S.G. § 2A2.1 App. Note 1 ("'First degree murder' means conduct that, if committed within the special maritime and territorial jurisdiction of the United States, would constitute first degree murder under 18 U.S.C. § 1111."). Section 1111 provides that "[m]urder is the unlawful killing of a human being with malice aforethought. . . . Any other murder is murder in the second degree." 18 U.S.C. § 1111(a). An offender commits or attempts second-degree murder if he acts with malice aforethought — the specific intent to kill — but not premeditation. Gov't of Virgin Islands v. Rosa, 399 F.3d 283, 295 & n.13 (3d Cir. 2005); see also Braxton v. United States, 500 U.S. 344, 351 n.* (1991) (explaining that attempted murder requires specific intent to kill).

To determine whether Murillo acted with the specific intent to kill, the District Court looked to United States v. Wilson, 992 F.2d 156 (8th Cir. 1993) (per curiam), a case with similar facts in which the Court of Appeals for the Eighth Circuit upheld the district court's application of U.S.S.G. § 2A2.1. In Wilson, the defendant described his conduct in the following way: "Ernest yelled shoot and Nick shoot and I shoot in the air cause I was scared to shoot those people. Cause they didn't do nothing to me." Id. at 157-58. The Court of Appeals for the Eighth Circuit found more than intent to kill; the court affirmed the district court's conclusion that, when "Wilson fired a shotgun out of

6

the passenger's window of the car towards a group of people," he acted with premeditation and deliberation. Id. at 158-59.

Murillo contends that Wilson is distinguishable because the defendant in that case was not under stress and therefore retained the ability to premeditate and deliberate before firing shots. Even accepting Murillo's description of events as a "vicious assault by a group of individuals," Murillo Br. 16, that fight did not deprive Murillo of his ability to act with specific intent. To the contrary, his own account of his conduct establishes that he acted with purpose. After the altercation inside the bar, Murillo went to his car, opened his trunk, retrieved his rifle, fired — either into the air or at the crowd in front of the bar — got into his car, traveled past the front of the bar, and fired again at the people standing in front. By Murillo's own estimation, he fired up to seven shots while outside his car and three or four shots while driving by the bar. We therefore reject the suggestion that the District Court's finding of specific intent was clearly erroneous. See Tran v. Gonzales, 414 F.3d 464, 470-71 (3d Cir. 2005) ("The active employment of force, generally to achieve some end, corresponds closely to the concept of intent, not recklessness."). By Murillo's own admission, he elected at least once to fire his assault rifle directly at a group of people. This active employment of force supports the District Court's conclusion that "[t]he sequence of events . . . are indicative that Murillo engaged in a clearly-defined thought process and not merely reckless conduct." App. 67. The court properly applied U.S.S.G. § 2A2.1(a)(2).

III.

For the reasons set forth above, we will affirm the District Court's judgment of sentence.